------------------------------- x
JOHN BORG; ALISON BORG; and JOHN :
BORG, PPA, ROBIN BORG,         :
                     :
       Plaintiffs,      :    Civil No. 3:15-cv-1380(AWT)
                     :
v.                     :
                     :
TOWN OF WESTPORT; DALE E. CALL, :
CHIEF OF POLICE; DETECTIVE JOHN :
ROCKE; DETECTIVE GEORGE TAYLOR; :
DETECTIVE ANTHONY P. PREZIOSO; :
OFFICER JOHN LACHIOMA; and    :
OFFICER DANIEL PAZ,        :
                     :
       Defendants.      :
------------------------------- x

## RULING ON MOTION TO DISMISS

The Amended Complaint in this case contains seven counts: unreasonable warrantless search in violation of Fourth and Fourteenth Amendments of the United States Constitution (First Count); a Monell claim (Second Count); intentional infliction of emotional distress by the defendant officers (Third Count); negligent infliction of emotional distress by the defendant officers (Fourth Count); negligence by the defendant officers (Fifth Count); indemnification claim against the Town of Westport pursuant to Conn. Gen. Stat. § 52-557n (Sixth Count); and indemnification claim against the Town of Westport pursuant to Conn. Gen. Stat. § 7-465 (Seventh Count).

The defendants, Town of Westport ("Westport"), Dale E.
Call, Chief of Police ("Chief Call"), Detective John Rocke
("Rocke"), Detective George Taylor ("Taylor"), Detective Anthony
P. Prezioso ("Prezioso"), Officer John Lachioma; and Officer
Daniel Paz move to dismiss the Amended Complaint[1] in its entirety
pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure
to state a claim upon which relief can be granted. The motion is
being granted.

## I.    FACTUAL ALLEGATIONS

"The complaint, which [the court] must accept as true for
purposes of testing its sufficiency, alleges the following
circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir.
1997).

The plaintiffs allege that "[o]n or about January 15, 2015
the Defendant police officers requested from one of the
Plaintiffs' immediate neighbors that the Westport Police
Department be allowed to install video cameras to conduct
surveillance of the Plaintiffs' Westport home, in an effort to

---

[1] The defendants filed their motion to dismiss the original
complaint. The plaintiffs thereafter filed a Motion to Amend
Complaint (Doc. No. 18), which the court granted. (See Doc. No.
25). The defendants objected to the plaintiff's motion, but
nonetheless stated, "[T]he Defendants stand by and reiterate the
arguments raised in their Motion to Dismiss the original
Complaint (#10), as those arguments are equally applicable to
the Proposed Amended Complaint." (Doc. No. 19). Accordingly, the
court considers the defendants' Motion to Dismiss as directed to
the Amended Complaint (Doc. No. 26).

obtain evidence of criminal activity." (Amended Complaint (Doc.
No. 26) ("Am. Compl.") ¶ 15.) The plaintiffs allege that on or
about January 30, 2015, Rocke and Prezioso installed the video
surveillance equipment and began filming their home. "The areas
under surveillance included the interior of the Plaintiffs' home
as well as the curtilage." (Id. ¶ 16.) On February 12, 2015,
Rocke and Taylor installed video cameras at a second neighbor's
residence, again in order to surveil the plaintiffs' home. The
plaintiffs allege that the "covert surveillance" took place
"around-the-clock" from January 30, 2015 to at least April 20,
2015. (Id. ¶ 20.) The surveillance was conducted without a
search warrant.

    The plaintiffs allege that "[t]he Defendants' prolonged and
pervasive video surveillance of the Plaintiffs' residence
recorded intimate details connected [to] the Plaintiffs' home
and family." (Id. ¶ 21.) The plaintiffs further allege that John
and Alison Borg are both psychologists who see patients in their
home and that the video surveillance "captured details of John
and Alison Borg's working life and those of the patients who
visited, all of whom reasonably expected to enjoy the
confidentiality of the therapist-patient relationship." (Id. ¶
22.)

    In the First Count, the plaintiffs allege that the
defendants acted under color of law to deprive them of their

Fourth and Fourteenth Amendment rights to be free from unreasonable searches. They allege that, as a "direct and proximate result" of the surveillance, they have suffered general and special damages and are entitled to relief under 42 U.S.C. § 1983. They further allege that "John and Alison Borg have suffered and continue to suffer mental anguish, shock, fright, and embarrassment of having the government secretly videotaping the intimate details of their family life over a period of twelve weeks" and that "[t]he minor Plaintiff, Robin Borg, has suffered and continues the suffer from a heightened level of anxiety, fear of police, feeling unsafe in her own home, mental anguish, shock, fright, and embarrassment of having the government secretly videotaping the intimate details of her life over a period of twelve weeks." (Id. I,[2] ¶¶ 28-29.)

In the Second Count, the plaintiffs allege, upon information and belief, that "the Town of Westport, by and through its Police Department, regularly conducts warrantless, covert video surveillance of its residents" and that Westport, by and through Chief Call, "had knowledge of the practice of warrantless covert video surveillance, or had they diligently exercised its duties to instruct, supervise, control, and discipline the Westport Police Department on a continuing basis,

---

[2] Because the numbering of paragraphs is not continuous, the court uses roman numerals to denote from which count the court is citing.

should have had knowledge of the wrongs that had been committed

. . . [or] were about to be committed." (Id. II, ¶¶ 31, 33.)

Additionally, they allege that Chief Call and Westport

"implicitly or explicitly adopted and implemented careless and

reckless policies, customs, or practices" of conducting

warrantless searches in violation of constitutional rights. (Id.

II, ¶ 34.) They also allege that Chief Call and Westport "failed

to train the Westport Police Department in the law of search and

seizure" and that such failure allowed officers to conduct

unconstitutional warrantless video surveillance of homes and

property. (Id. II, ¶ 36.) The plaintiffs allege that Chief Call

and Westport were in a position to prevent these alleged

unconstitutional warrantless searches and "could have done so by

reasonable diligence, but intentionally, knowingly, or

recklessly failed or refused to do so." (Id. II, ¶ 35.) As a

direct and proximate result, the plaintiffs allege that they

have suffered damages.

In the Third Count, brought against the defendant officers,

the plaintiffs allege that the "actions by the defendant

officers were intentional, willful and deliberate, and caused

the Plaintiffs to suffer from severe emotional distress, which

the defendant officers knew or should have known would have

resulted from their actions." (Id. III, ¶ 32.) They allege that

the officers' conduct was "extreme and outrageous," that it was

the "sole cause of the Plaintiffs' distress," that their distress was "severe," and that they "suffered damages." (<u>Id.</u> III, ¶¶ 32-35.)

In the Fourth Count, brought against the defendant officers, the plaintiffs allege that "[t]he defendant officers were negligent in causing the Plaintiff to suffer emotional distress in that the defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress, and that distress might result in illness or bodily harm, and did cause the plaintiff[s] bodily harm." (<u>Id.</u> IV, ¶ 31.) They allege that as a result of the defendants' negligence, they have suffered damages.

In the Fifth Count, brought against the defendant officers, the plaintiffs allege that "[a]s . . . police officers for the Town of Westport, the defendant officers owed the Plaintiffs a duty of care," that they breached this duty by conducting the warrantless search and that, as a result, the plaintiffs have suffered damages. (<u>Id.</u> V, ¶¶ 31-33.)

In the Sixth Count, the plaintiffs allege that "[p]ursuant to Gen. Stat. § 52-557n, the Town of Westport is liable for the injuries and losses complained of caused by the negligent acts or omissions of any officer or agent thereof acting within the scope of his employment or official duties[.]" (<u>Id.</u> VI, ¶ 3.)

In the Seventh Count, the plaintiffs allege that pursuant to Conn. Gen. Stat. § 7-465, Westport is liable to indemnify the officers for any damages awarded for physical damage to the plaintiffs or their property as a result of the defendant officers' video surveillance.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful

in fact)." <u>Id.</u> (citations omitted).  However, the plaintiff

must plead "only enough facts to state a claim to relief that is

plausible on its face." <u>Id.</u> at 1974.  "The function of a motion

to dismiss is 'merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might

be offered in support thereof.'" <u>Mytych v. May Dept. Store Co.</u>,

34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting <u>Ryder Energy</u>

<u>Distrib. v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779

(2d Cir. 1984)).  "The issue on a motion to dismiss is not

whether the plaintiff will prevail, but whether the plaintiff is

entitled to offer evidence to support his claims." <u>United</u>

<u>States v. Yale New Haven Hosp.</u>, 727 F. Supp. 784, 786 (D. Conn.

1990) (citing <u>Scheuer</u>, 416 U.S. at 232).

   In its review of a motion to dismiss for failure to state a

claim, the court may consider "only the facts alleged in the

pleadings, documents attached as exhibits or incorporated by

reference in the pleadings and matters of which judicial notice

may be taken." <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12,

15 (2d Cir. 1993).

## III. DISCUSSION

   The defendants move to dismiss all counts pursuant to

Federal Rule of Civil Procedure 12(b)(6) on the ground that the

plaintiffs have failed to state a claim upon which relief can be

granted.

**A.    Count One -- Violation of the Fourth Amendment**

The plaintiffs allege that the defendants acted under color of state law to violate their Fourth and Fourteenth Amendment rights.

> The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "At the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."

Kyllo v. United States, 533 U.S. 27, 31 (2001) (quoting Silverman v. United States, 365 U.S. 505, 511 (1961)).

The defendants argue that the plaintiffs have failed to allege that they conducted a "search" of the plaintiffs' home within the meaning of the Fourth Amendment. "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo, 533 U.S. at 33 (citing Katz v. United States, 389 U.S. 347 (1967)). In general, "visual observation is no 'search' at all" for purposes of the Fourth Amendment. Id. at 32 (citing Dow Chemical Co. v. United States, 476 U.S. 227, 234–235 (1986)). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Florida v. Riley, 488 U.S. 445, 449 (1989) (quoting California v. Ciraolo, 476 U.S. 207, 213 (1986)). Accordingly, "what a person knowingly exposes to the

public through an open door or window does not receive Fourth Amendment protection." United States v. Davis, 326 F.3d 361, 365 (2d Cir. 2003). "Generally, the police are free to observe whatever may be seen from a place where they are entitled to be." United States v. Fields, 113 F.3d 313, 321 (2d Cir. 1997) (citing Riley, 488 U.S. at 449).

In this case, the plaintiffs do not allege that the defendant officers physically entered their property or home. In addition, the plaintiffs have not alleged that the defendant officers observed anything other than that which could be seen from a place where they were entitled to be, see Fields, 113 F.3d at 321, or that they observed anything other than what the plaintiffs voluntarily chose to expose to public view, see id. ("Although society generally respects a person's expectations of privacy in a dwelling, what a person chooses voluntarily to expose to public view thereby loses its Fourth Amendment protection." (citing Ciraolo, 476 U.S. at 213)).

Although the officers used video equipment to surveil the house, as opposed to naked-eye observation, the use of technology to conduct visual surveillance does not inherently raise constitutional concerns. See Dow Chemical Co., 476 U.S. at 238 ("the photographs here are not so revealing of intimate details as to raise constitutional concerns. Although they undoubtedly give . . . more detailed information than naked-eye

views, they remain limited to an outline of the facility's buildings and equipment. The mere fact that human vision is enhanced somewhat, at least to the degree here, does not give rise to constitutional problems."). In Kyllo, the Supreme Court considered "how much technological enhancement of ordinary perception from such a vantage point, if any, is too much" and "what limits there are upon this power of technology to shrink the realm of guaranteed privacy." Kyllo, 533 U.S. at 33-34. The Court concluded that "[w]here . . . the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." Id. at 40. In Kyllo, the Court held that use of thermal-imaging technology constituted a search of a person's home because such technology was not in general public use at the time and the information obtained would previously have been unknowable without physical intrusion. In this case, the plaintiffs do not allege facts that support an inference that the police used a device that was not in general public use at the time or that the police explored any details of the home that would previously have been unknowable without physical intrusion. Thus, they have failed to allege facts sufficient to suggest that the defendants conducted a Fourth Amendment search of their home or property.

The plaintiffs argue that <u>Shafer v. City of Boulder</u>, 896 F. Supp. 2d 915 (D. Nev. 2012) "foreclose[s] any argument that the Plaintiff's § 1983 claim is not legally feasible and fails to state a cause of action." (Mem. of Law in Supp. of Opp. to the Mot. to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. No. 22-1) ("Opp.") at 5.) In <u>Shafer</u>, the court denied the defendants' motion for summary judgment where the government installed "four infrared, long-range, weatherproof, silent video surveillance cameras" that had been provided by the Department of Homeland Security and surveilled the plaintiff's backyard and bathroom window around the clock for 56 days. <u>Shafer</u>, 896 F. Supp. 2d at 924. The court concluded that the government had violated the plaintiff's reasonable subjective and objective expectations of privacy. In concluding that the surveillance violated the plaintiff's objective expectation of privacy, the court stated:

> Importantly, it was not only [the] omnipresence and lengthy duration of the surveillance that intruded upon Shafer's expectation of privacy in his home, but also the intensity of the surveillance. The DHS cameras provided to Fenyves were long-range, infrared, heavy-duty, waterproof, daytime/nighttime cameras, purchased as part of a $50,000 Department of Homeland Security grant to combat terrorism and similar criminal activity. The DHS cameras undoubtedly contained superior video-recording capabilities than a video camera purchased from a department store. As such, this case presents similar facts to cases where "the Government uses a device that is not in general public use[] to explore details of a home that would previously have been unknowable without physical intrusion." <u>See</u> <u>Kyllo</u>, 533 U.S. at 40[.]

Shafer, 896 F. Supp. 2d at 932. Here the facts alleged do not suggest that the surveillance was comparable in terms of "intensity" to the conduct in Shafer, and that fact distinguishes this case from Shafer along the lines discussed in Kyllo.

Accordingly, the court concludes that here the use of the video cameras did not render the defendants' surveillance a "search" for purposes of the Fourth Amendment, and the First Count is being dismissed.

### B.   Count Two -- Monell Violation

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978)).

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.

Id. at 60-61 (citations omitted) (quoting Monell, 436 U.S. at 691).

The plaintiffs allege that Westport is liable under Monell on the grounds that Westport had the authority to make a policy

13

to conduct covert video surveillance; that Westport had

"knowledge of the practice of warrantless covert video

surveillance" or should have known of the practice; that

Westport "implicitly or explicitly adopted and implemented

careless and reckless policies, customs, or practices" that

included unconstitutional searches; that Westport had the power

to prevent unconstitutional searches and refused to do so; that

Westport failed to adequately train officers on the law of

search and seizure; and that, as a result, the plaintiffs

suffered "general and special damages in connection with the

deprivation of their constitutional rights guaranteed by the

[F]ourth and [Fourteenth] [A]mendments[.]" (Am. Compl. II, ¶¶

31-37.)

Because, as discussed above, the defendant officers did not

conduct an unconstitutional search of the plaintiffs' property,

the plaintiffs fail to allege a Monell claim. See Johnson v.

City of New York, 551 F. App'x 14, 15 (2d Cir. 2014) ("Because

he has not alleged a valid underlying constitutional

deprivation, his claim against New York City pursuant to Monell

v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.

2d 611 (1978), must also fail. See City of Los Angeles v.

Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806

(1986) (stating that Monell liability does not lie where

municipality's officer does not inflict constitutional harm).");

<u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006)

("<u>Monell</u> does not provide a separate cause of action for the

failure by the government to train its employees; it <u>extends</u>

liability to a municipal organization where that organization's

failure to train, or the policies or customs that it has

sanctioned, led to an independent constitutional violation."

(emphasis in original)).

Accordingly, the Second Count is being dismissed.[3]

## C.    Count Three -- Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional

distress under Connecticut law, a plaintiff must allege:

> (1) that the actor intended to inflict emotional distress
> or that he knew or should have known that emotional
> distress was the likely result of his conduct; (2) that the
> conduct was extreme and outrageous; (3) that the
> defendant's conduct was the cause of the plaintiff's
> distress; and (4) that the emotional distress sustained by
> the plaintiff was severe.

<u>Watts v. Chittenden</u>, 301 Conn. 575, 586 (2011) (quoting <u>Appleton</u>

<u>v. Bd. of Educ.</u>, 254 Conn. 205, 210 (2000)).

---

[3] To the extent the plaintiffs allege that the defendant officers' actions violated their patients' reasonable expectation of privacy (<u>see</u> Am. Compl. ¶ 23 ("John and Alison Borg are both psychologists, and see patients from their home. The covert surveillance further captured details of John and Alison Borg's working life and those patients who visited, all of whom reasonably expected to enjoy the confidentiality of the therapist-patient relationship.")), they do not have standing to raise a Fourth Amendment claim on behalf of their patients.

In this case, the plaintiffs have failed to allege facts to support the first, second and fourth requirements. As to the first requirement, the plaintiffs have failed to adequately allege that the defendant officers intended to inflict emotional distress on the plaintiffs or that they should have known that emotional distress was the likely result of their conduct. They allege that the defendant officers' actions "were intentional, willful and deliberate, and caused the Plaintiffs to suffer from severe emotional distress, which the defendant officers knew or should have known would have resulted from their actions." (Am. Compl. III, ¶ 32.) However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a). <u>Iqbal</u>, 556 U.S. at 678. The plaintiffs do not elsewhere make any factual allegations that could support the inference that the defendant officers intended to cause the plaintiffs emotional distress or should have known that their actions would cause such distress. To the extent the plaintiffs base their claim on the fact that the police intended to surveil the house and that the surveillance was distressing, the plaintiffs' claim also fails. <u>See</u> <u>Abdella v. O'Toole</u>, 343 F. Supp. 2d 129, 140 (D. Conn. 2004) ("A police search, legal or not, is likely to unnerve or distress most people, but an intentional infliction of emotional distress

claim requires some showing of an intent to cause emotional

harm."). Therefore, the court concludes that the plaintiffs have

failed to allege facts sufficient to satisfy the first

requirement for a claim for intentional infliction of emotional

distress.

To satisfy the second requirement of a claim for

intentional infliction of emotional distress, the conduct

complained of must be "extreme and outrageous." "Liability for

intentional infliction of emotional distress requires conduct

that exceeds 'all bounds usually tolerated by decent society. .

. .'" Appleton, 254 Conn. at 210 (quoting Petyan v. Ellis, 200

Conn. 243, 254 n. 5 (1986) (quoting W. Prosser & W. Keeton,

Torts (5th Ed. 1984) § 12, p. 60)).

> Liability has been found only where the conduct has been so
> outrageous in character, and so extreme in degree, as to go
> beyond all possible bounds of decency, and to be regarded
> as atrocious, and utterly intolerable in a civilized
> community. Generally, the case is one in which the
> recitation of the facts to an average member of the
> community would arouse his resentment against the actor,
> and lead him to exclaim, "Outrageous!"

Id. at 211 (quoting Restatement (Second), Torts § 46, comment

(d), p. 73 (1965)). The plaintiffs have not alleged facts to

suggest that the installation of video surveillance cameras on

neighboring property exceeds "all bounds usually tolerated by

decent society." First, as discussed above, the court has

concluded that the plaintiffs have failed to allege that the

defendant officers conducted an unlawful search. Additionally, they have failed to allege other facts that could provide a basis for their contention that the defendant officers' conduct was extreme and outrageous. For example, there is no allegation that the defendant officers observed anything that was not ordinarily visible to the plaintiffs' neighbors.

Also, while the plaintiffs allege that the defendant officers may have been able to observe patients who sought mental health treatment from the plaintiffs, they have not alleged that their neighbors or anyone passing by on the street could not have observed the same. Thus, this fact does not change the court's analysis, and the court concludes that the plaintiffs have failed to allege any facts to suggest that the defendant officers engaged in conduct that might be considered "extreme and outrageous."

In order to satisfy the fourth requirement the "distress must be 'so severe that no reasonable person could be expected to endure it.'" Craig v. Yale Univ. Sch. of Med., 838 F. Supp. 2d 4, 12 (D. Conn. 2011) (quoting Tomby v. Comty. Renewal Team, Inc., 2010 WL 5174404, at *7 (D. Conn. Dec. 15, 2010)). Comment j of Section 46 of the Restatement (Third) or Torts: Liability for Physical and Emotional Harm states that this requirement is satisfied

when the person seeking recovery has suffered *severe*
emotional harm. Complete emotional tranquility is seldom
attainable in this world, and some degree of emotional
harm, even significant harm, is part of the price of living
in a complex and interactive society. Requiring proof that
the emotional harm is severe (and the result of extreme and
outrageous conduct) provides some assurance that the harm
is genuine. Thus, the law intervenes only when the
plaintiff's emotional harm is severe and when a person of
ordinary sensitivities in the same circumstances would
suffer severe harm. . . . Severe harm must be proved, but
in many cases the extreme and outrageous character of the
defendant's conduct is itself important evidence bearing on
whether the requisite degree of harm resulted[.]

Restatement (Third) of Torts: Phys. & Emot. Harm § 46 cmt. j

(Am. Law. Inst. 2012).

The plaintiffs allege that John and Alison Borg "have
suffered and continue to suffer mental anguish, shock, fright,
and embarrassment of having the government secretly videotaping
the intimate details of their family life over a period of
twelve weeks" and that "[t]he minor Plaintiff, Robin Borg, has
suffered and continues to suffer from a heightened level of
anxiety, fear of police, feeling unsafe in [her] own home,
mental anguish, shock, fright, and embarrassment of having the
government secretly videotaping the intimate details of her life
over a period of twelve weeks." (Am. Compl. I, ¶¶ 28-29.)
Although the plaintiffs are upset and distressed, they have not
alleged facts sufficient to suggest that their distress was "so
severe that no reasonable person could be expected to endure
it." "Absent some evidence that plaintiff suffered these

symptoms to an extraordinary degree, the facts alleged in his
pleadings and opposition papers, taken in the light most
favorable to plaintiff, do not support his claim of severe
emotional distress." Almonte v. Coca-Cola Bottling Co. of N.Y.,
Inc., 959 F. Supp. 569, 576 (D. Conn. 1997); see also Lachira v.
Sutton, No. 3:05-cv-1585, 2007 WL 1346913, at *23 (D. Conn. May
7, 2007) (no evidence was provided to support a finding "that
any emotional distress suffered was 'severe,' at a level which
'no reasonable person could be expected to endure,' or that she
experienced her symptoms 'to an extraordinary degree'"); Colon
v. Tucciarone, No. CIV 3:02CV00891PCD, 2003 WL 22455005, at *4
(D. Conn. July 21, 2003) ("Agitation, disturbance, fear,
nervousness, embarrassment, pain, and loss of faith in the law
following a traffic stop, arrest, and court appearance are by no
means distress that no reasonable person can be expected to
endure."). Compare Mellaly v. Eastman Kodak Co., 597 A.2d 846,
848 (Conn. Super. Ct. 1991) (severe emotional distress
sufficiently alleged where plaintiff alleged he "became
depressed, lost sleep, suffered from anxiety attacks, stress and
felt physical pain, including high blood pressure, and suffered
from rashes, skin problems and a swollen face resulting from
anxiety."). So, although the plaintiffs allege that "[t]he
emotional distress sustained by [them] was severe[,]" (Am.
Compl. III, ¶ 34), this allegation is no more than a

"[t]hreadbare recital[] of the elements of a cause of action"
and does not satisfy the pleading requirements of Federal Rule
of Civil Procedure 8(a). Iqbal, 556 U.S. at 678.

Because the plaintiffs have failed to allege facts to
support the first, second and fourth elements of a claim for
intentional infliction of emotional distress, the Third Count is
being dismissed.

### D. Fourth and Fifth Counts: Negligent Infliction of Emotional Distress and Negligence

#### 1. Governmental Immunity

The defendants argue that the Fourth and Fifth Counts,
brought against the defendant officers, are barred by the
doctrine of governmental immunity. Although governmental
immunity is generally raised as an affirmative defense, "[a]n
affirmative defense may be raised by a pre-answer motion to
dismiss under Rule 12(b)(6), without resort to summary judgment
procedure, if the defense appears on the face of the complaint."
McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (quoting
Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir.
1998)).

Under Connecticut law, "[m]unicipal officials are immune
from liability for negligence arising out of their discretionary
acts[.]" Doe v. Petersen, 279 Conn. 607, 614 (2006). "The
hallmark of a discretionary act is that it requires the exercise

of judgment.... In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." <u>Violano v. Fernandez</u>, 280 Conn. 310, 318 (2006) (alterations in original) (quoting <u>Martel v. Metro. Dist. Comm'n</u>, 275 Conn. 38, 48–49 (2005)). It is undisputed that the defendant officers' acts were discretionary. (<u>See</u> Mem. of Law in Supp. of Mot. to Dismiss (Doc. No. 10-1) at 14-16 (arguing that the defendant officers' acts were discretionary); Opp. at 16 (arguing that imminent harm exception applies)).

There are three recognized exceptions to discretionary act immunity:

> First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. <u>E.g.</u>, <u>Mulligan v. Rioux</u>, 229 Conn. 716, 728, 732, 643 A.2d 1226 (1994). Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. <u>See</u>, <u>e.g.</u>, <u>Sestito v. Groton</u>, 178 Conn. 520, 525–28, 423 A.2d 165 (1979). Third, liability may be imposed when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm...." <u>Evon v. Andrews</u>, supra, 211 Conn. at 505, 559 A.2d 1131.

<u>Petersen</u>, 279 Conn. at 615-16 (footnote omitted). The plaintiffs argue that the imminent harm exception applies. They argue that the danger to the plaintiffs "was limited in duration--the search was continuous over a twelve week period, and limited in geographical scope to the Borg's residence, thereby meeting the

22

imminent requirement. Equally apparent was that their conduct

subjected the Borg's to harm, as alleged in the Complaint."

(Opp. at 17.)

As a threshold matter, the court notes that in <u>Haynes v.</u>

<u>City of Middletown</u>, the Connecticut Supreme Court articulated

the imminent harm to identifiable persons exception to

government immunity as follows:

> "This court has recognized an exception to discretionary
> act immunity that allows for liability when the
> circumstances make it apparent to the public officer that
> his or her failure to act would be likely to subject an
> identifiable person to imminent harm.... This identifiable
> person-imminent harm exception has three requirements: (1)
> an imminent harm; (2) an identifiable victim; and (3) a
> public official to whom it is apparent that his or her
> conduct is likely to subject that victim to that harm....
> All three must be proven in order for the exception to
> apply."

313 Conn. 303, 312-13 (2014) (quoting <u>Edgerton v. Clinton</u>, 311

Conn. 217, 230-31 (2014)). Thus, while there is a reference in

the third requirement to the public official's "conduct," it

appears from the context that the only conduct being referenced

is conduct that constitutes a "failure to act."

The plaintiffs find support in <u>Brooks v. Powers</u>, 165 Conn.

App. 44 (2016), for their argument that the defendants are

liable here because "their conduct subjected the Borg's to

harm." There the court stated that the Connecticut Supreme Court

had "stated [the] exception in two different ways" and described

the first when a public official's failure to act would be

23

likely to subject an identifiable person to imminent harm and

the second as when the three requirements set forth in <u>Haynes</u>

are satisfied.[4] The discussion in <u>Brooks</u>, however, is based

---

[4]     As a threshold matter, we must determine the general
contours of the imminent harm, identifiable victim
exception. Our Supreme Court has stated that exception in
two different ways.

    First, the court has said that the exception applies
if "the circumstances make it apparent to the public
officer that <u>his or her failure to act would be likely to
subject</u> an identifiable person to imminent
harm...."(Emphasis added; internal quotation marks
omitted.) <u>Haynes v. Middletown</u>, supra, 314 Conn. at 312,
101 A.3d 249. Read literally, this would mean that if it is
clear before the officer acts that doing nothing likely
would result in harm to the victim, then the exception
applies, immunity is turned off, and whatever response or
nonresponse the officer makes must be reasonable; a
negligent response would subject the officer to liability.
On this reading, the exception would operate as an off
switch for immunity in a subset of high stakes situations,
requiring officers to act reasonably when someone's life
was on the line.

    Second, the court has said that the exception applies
if the plaintiff can show "(1) an imminent harm; (2) an
identifiable victim; and (3) a public official to whom it
is apparent that <u>his or her conduct is likely to subject</u>
that victim to that harm." (Emphasis added; internal
quotation marks omitted.) Id., at 313, 101 A.3d 249. Read
literally, this would mean that an officer who has
identified a victim as threatened by imminent harm is still
free to respond unreasonably, so long as it is not apparent
that the officer's particular response will likely result
in harm to the victim. On this reading, the exception would
generally permit officers to act unreasonably, even in high
stakes situations, but would peel back that immunity if an
officer showed a particularly egregious disregard for life.

    We conclude that our Supreme Court's immunity
jurisprudence supports the second reading of the exception.
A plaintiff must therefore prove not only that it was
apparent that a victim was at risk of imminent harm, but
also that it was apparent that the defendants' chosen

entirely on a reading of <u>Haynes</u> and the language in <u>Haynes</u> clearly states the principle that the exception exists in the context of a failure to act.

Thus, the court concludes that one of the requirements for pleading the imminent harm to identifiable persons exception here is pleading facts that could show that the circumstances made it apparent to the defendant officers that their failure to act would be likely to subject the plaintiffs to imminent harm. Here, however, the plaintiffs have alleged that the defendant officers acted in a certain way, not that they failed to act and thus subjected the plaintiffs to imminent harm. Accordingly, the plaintiffs have not satisfied this requirement for pleading the imminent harm to identifiable persons exception.

In addition, the plaintiffs have failed to allege facts that satisfy the imminent harm requirement. To the extent the plaintiffs argue that the defendant officers' actions exposed them to imminent harm, they do not identify that imminent harm specifically in either the Fourth or Fifth Counts or in their opposition. (<u>See</u> Opp. at 17 ("[e]qually apparent was that their conduct subjected the Borg's to harm, as alleged in the Complaint").) To the extent the "imminent harm" is violation of

response or nonresponse to the imminent danger would likely subject the victim to that harm.

<u>Brooks v. Powers</u>, 165 Conn. App. 44, 60–61 (2016).

the plaintiffs' Fourth and Fourteenth Amendment rights, that claim is unavailing because the court has concluded that the plaintiffs have not adequately alleged such a violation. To the extent the "imminent harm" is emotional distress experienced by the plaintiffs, such harm is not the type of "dangerous condition" that rises to a level so as to invoke the imminent harm to identifiable victim exception. See Bento v. City of Milford, No. 3:13CV1385, 2014 WL 1690390, at *6 (D. Conn. Apr. 29, 2014) ("courts in this state have also held that the imminent harm complained of must be physical in nature in order for the exception to apply"); Pane v. City of Danbury, No. CV97347235S, 2002 WL 31466332, at *9 (Conn. Super. Ct. Oct. 18, 2002), aff'd, 267 Conn. 669 (2004)[5] ("Cases where plaintiffs allege "imminent harm" typically involve physical harm rather than emotional distress."[6]).

---

[5] Pane, 267 Conn. 669 (2004) was overruled by Grady v. Town of Somers, 984 A.2d 684 (2009). However, claims against the individual employee were withdrawn from the case before after the Superior Court decision in Pane, 2002 WL 31466332.
[6] See Elliott v. City of Waterbury, 245 Conn. 385, 715 A.2d 27 (1998) (decedent killed by hunter while on city-owned property); Purzycki v. Fairfield, 244 Conn. 101, 708 A.2d 937 (1998) (student injured in unsupervised school hallway); Fraser v. United States, 236 Conn. 625, 674 A.2d 811 (1996) (decedent stabbed at federal medical center); Burns v. Board of Education, 228 Conn. 640, 638 A.2d 1 (1994) (student injured by fall in school courtyard); Evon v. Andrews, 211 Conn. 501, 559 A.2d 1131 (1989); Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 161, 544 A.2d 1185 (decedent attacked at city housing authority project); Shore v. Stonington, 187 Conn. 147, 444 A.2d 1379

Therefore, the defendant officers are entitled to
governmental immunity with respect to the Fourth and Fifth
Counts, and these counts are being dismissed.

> ## 2. Fourth Count: Negligent Infliction of Emotional Distress

Even if the defendant officers were not entitled to
governmental immunity with respect to the claim for negligent
infliction of emotional distress, it should be dismissed because
the plaintiffs have failed to state a claim upon which relief
can be granted.

To state a claim for negligent infliction of emotional
distress, a plaintiff must allege that "(1) the defendant's
conduct created an unreasonable risk of causing the plaintiff
emotional distress; (2) the plaintiff's distress was
foreseeable; (3) the emotional distress was severe enough that
it might result in illness or bodily harm; and (4) the
defendant's conduct was the cause of the plaintiff's distress."
See Hall v. Bergman, 296 Conn. 169, 182 n.8 (2010) (quoting
Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003)).

The plaintiffs allege that "[t]he defendant officers were
negligent in causing the Plaintiff[s] to suffer emotional
distress in that the defendants should have realized that their
conduct involved an unreasonable risk of causing emotional

---

(1982) (decedent killed by vehicle driven by intoxicated
driver).

distress, and that distress might result in illness or bodily harm, and did cause the plaintiff bodily harm." (Am. Compl. IV, ¶ 31.) As an initial matter, this is a threadbare recital of the elements of a cause of action and does not satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a).

However, even if the court were to accept this conclusory allegation as sufficient to satisfy the requirements of Rule 8(a), the plaintiffs have nonetheless failed to state a claim upon which relief can be granted. The plaintiffs allege that the defendant officers' conduct caused them to suffer "mental anguish, shock, fright, and embarrassment" as well as "anxiety, fear of police, feeling unsafe in own home, mental anguish, shock, fright, and embarrassment[.]" (Id. I, ¶¶ 28-29.)

Assuming arguendo that this harm is sufficiently severe for purposes of a claim for negligent infliction of emotional distress, but see Abdella, 343 F. Supp. 2d at 140-41, the plaintiffs have failed to allege facts sufficient to suggest that such harm was foreseeable to the defendants.

> The foreseeability requirement in a negligent infliction of emotional distress claim is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm. Scanlon v. Connecticut Light & Power Co., 258 Conn. 436, 446-47, 782 A.2d 87 (2001). In order to state a claim for negligent infliction of emotional distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm. Id.

Olson v. Bristol-Burlington Health Dist., 87 Conn. App. 1, 5,
(2005). The plaintiffs have not alleged facts sufficient to
suggest that the defendant officers should have foreseen that
their behavior would likely cause emotional distress so severe
as to be likely to lead to illness or bodily harm. First, as
discussed above, they have not alleged facts to show that the
defendants' search was unlawful. Second, they have not alleged
facts sufficient to suggest that the manner in which the
defendant officers surveilled the plaintiffs would foreseeably
create an unreasonable risk of emotional distress. Cf. Olson, 87
Conn. App. at 5 ("to prevail on a claim of negligent infliction
of emotional distress arising in the employment setting, a
plaintiff need not plead or prove that the discharge, itself,
was wrongful, but only that the defendant's conduct in the
termination process created an unreasonable risk of emotional
distress"). Although it is reasonably foreseeable that a covert
surveillance operation would be upsetting to the person being
surveilled, it is not reasonably foreseeable that a covert
surveillance operation in and of itself creates an unreasonable
risk of causing emotional distress so severe that it might
result in illness or bodily harm. See Abdella, 343 F. Supp. 2d
at 141 ("Plaintiffs allege that they are worried, depressed,
unhappy in their community and that they have lost trust in the
police. Any police activity may reasonably result in exactly the

type of response described by the plaintiffs, regardless of its legality. As unfortunate as these experiences are, the court cannot conclude that a police search involves an unreasonable risk of such distress, or that the distress alleged by plaintiffs is so severe as to cause illness or bodily harm without some proof of such harm, and the record is devoid of sufficient proof on this point.")

Because, as alleged here, neither the fact that the defendant officers conducted video surveillance of the property nor the manner in which they conducted the surveillance could create an unreasonable risk of causing the plaintiff foreseeable emotional distress that would be severe enough that it might result in illness or bodily harm, the plaintiffs have failed to state a claim for negligent infliction of emotional distress.

### 3. Fifth Count: Negligence

Even if the defendant officers were not entitled to governmental immunity with respect to the claim of negligence, it should be dismissed because the plaintiffs have failed to state a claim upon which relief can be granted.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384 (1994). The plaintiffs allege that "[a]s . . . police officers for the Town of Westport, the defendant officers owed

30

the Plaintiffs a duty of care." (Am. Compl. V, ¶ 31.) However, they do not allege the basis, the nature, or the scope of the police officers' alleged duty to the plaintiffs. They allege that the supposed duty was breached "by the aforementioned search, which had no justification or excuse in law, and [was] instead illegal, improper and unrelated to any activity in which law enforcement officers may rightfully engage in the course of protecting persons or property or ensuring civil order." (Id. V, ¶ 32.) It seems, then, that the alleged duty the plaintiffs claim was owed by the defendant officers is one to follow the law with respect to searches. As discussed above, however, the plaintiffs have not adequately alleged that the defendant officers have failed to do so. Accordingly, the plaintiffs have failed to state a claim for negligence upon which relief can be granted.

**E.    Sixth Count: Indemnity Pursuant to Conn. Gen. Stat. § 52-557n**

Connecticut General Statutes Section 52-557n(a)(1) provides in pertinent part

> (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . .

Conn. Gen. Stat. § 52-557n(a)(1). Section 52-557n(a)(2) provides an exception for discretionary acts:

> (2) Except as otherwise provided by law, a political
> subdivision of the state shall not be liable for damages to
> person or property caused by . . . negligent acts or
> omissions which require the exercise of judgment or
> discretion as an official function of the authority
> expressly or impliedly granted by law.

Conn. Gen. Stat. § 52-557n(a)(2). The defendant officers'
conduct in this case was discretionary and none of the three
exceptions to governmental immunity apply. Thus, the plaintiffs
have failed to state a claim for indemnity under Conn. Gen.
Stat. § 52-557n. See Violano, 280 Conn. at 335 ("[T]he
municipality and its official or employee will be immune from
liability for their negligence if the act complained of was
discretionary in nature and does not fall within the three
exceptions to discretionary act immunity.").

Therefore, the Sixth Count is being dismissed.

### F.    Seventh Count: Indemnity Pursuant to Conn. Gen. Stat. § 7-465

Connecticut General Statutes Sections 7-465 provides, in
pertinent part:

> Any town, city or borough, notwithstanding any inconsistent
> provision of law, general, special or local, shall pay on
> behalf of any employee of such municipality . . . all sums
> which such employee becomes obligated to pay by reason of
> the liability imposed upon such employee by law for damages
> awarded for infringement of any person's civil rights or
> for physical damages to person or property, except as set
> forth in this section, if the employee, at the time of the
> occurrence, accident, physical injury or damages complained
> of, was acting in the performance of his duties and within
> the scope of his employment, and if such occurrence,
> accident, physical injury or damage was not the result of

> any wilful or wanton act of such employee in the discharge
> of such duty.

Conn. Gen. Stat. § 7-465. The court has concluded that the plaintiffs have failed to state a claim against the defendant officers. Therefore, the plaintiffs also have failed to state a claim for indemnification pursuant to Conn. Gen. Stat. § 7-465, and the Seventh Count is being dismissed. <u>See</u> <u>Myers v. City of Hartford</u>, 84 Conn. App. 395, 401 (2004) ("Under § 7-465, the municipality's duty to indemnify attaches only when the employee is found to be liable and the employee's actions do not fall within the exception for wilful and wanton acts."); <u>Singhaviroj v. Bd. of Educ. of Town of Fairfield</u>, 301 Conn. 1, 5 n.4 (2011) (noting that an indemnification claim brought under Conn. Gen. Stat. § 7-465 is "derivative of the plaintiff's claim under 42 U.S.C. § 1983 because the plaintiff cannot prevail under § 7-465 unless he prevails under § 1983").

## IV.  CONCLUSION

For the reasons set forth above, the Motion to Dismiss (Doc. No. 10) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Signed this 18th day of August 2016, at Hartford, Connecticut.

_____
                                    /s/
                             Alvin W. Thompson
                         United States District Judge